IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BERG CORPORATION, | * |
|     Plaintiff, | * |
|     v. | *    CIVIL NO. JKB-19-00043 |
| C. NORRIS MANUFACTURING, LLC, | * |
|     Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| C. NORRIS MANUFACTURING, LLC, | * |
|     Third-Party Plaintiff, | * |
|     v. | * |
| POWERPURE, LLC, et al., | * |
|     Third-Party Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

This case arises out of a business transaction between the Berg Corporation ("Berg") and C. Norris Manufacturing, LLC ("C. Norris"). Berg, a Maryland demolition contractor, hired C. Norris, an Ohio manufacturer, to substantially modify a piece of heavy equipment. Berg alleges that C. Norris committed negligence in modifying the equipment. (Compl., ECF No. 1-2.) C. Norris has filed a counterclaim against Berg as well as a third-party complaint against several parties that assisted C. Norris in modifying the equipment: PowerPure, LLC ("PowerPure"), P.E.

Alliance, LLC ("P.E. Alliance"), and Holmbury, Inc. and Holmbury Group (collectively, "Holmbury").[1] (Counterclaim, ECF No. 12; Third-Party Compl., ECF No. 15.)

Before the Court are the third-party defendants' motions to dismiss the third-party complaint. Holmbury and PowerPure move to dismiss for lack of personal jurisdiction and for failure to state a claim. (Holmbury Mot. Dismiss, ECF No. 63; PowerPure Mot. Dismiss, ECF No. 90.) P.E. Alliance moves to dismiss for lack of personal jurisdiction and for C. Norris's failure to comply with Maryland's Certificate of Merit statute. (P.E. Alliance Mot. Dismiss, ECF No. 53; P.E. Alliance Supplemental Mot. Dismiss, ECF No. 89.) C. Norris contests each of these motions, but requests that if the Court concludes there is no personal jurisdiction over the third-party defendants, it transfer this entire action to the U.S. District Court for the Northern District of Ohio. (Opp'n Mem. P.E. Alliance Mot. Dismiss at 3, ECF No. 69; Opp'n Mem. Holmbury Mot. Dismiss at 3–4, ECF No. 77; Opp'n Mem. PowerPure Mot. Dismiss at 3, ECF No. 92.)

For the reasons set forth below, the Court concludes there is no personal jurisdiction over the third-party defendants in the U.S. District Court for the District of Maryland. But in light of C. Norris's request to transfer the entire action, it will not yet act on the third-party defendants' motions. Instead, it will order Berg to respond to C. Norris' request to transfer the entire case to the Northern District of Ohio. If the Court ultimately concludes transfer of the entire action is warranted, it will so transfer; if it concludes transfer of the entire action is not warranted, it will sever the third-party complaint and transfer those claims to the Northern District of Ohio,[2] while continuing to adjudicate the suit between Berg and C. Norris.

---

[1] C. Norris initially included Alliance Design as a third-party defendant, but voluntarily dismissed them from the case on August 2, 2019. (ECF No. 73.)

[2] When a court lacks personal jurisdiction over a defendant, and venue is therefore improper, it has the option to either dismiss the defendant or transfer the case to a proper venue. 28 U.S.C.A. § 1406(a). "Courts generally favor transfer over dismissal, unless there is evidence that a case was brought in an improper venue in bad faith or to harass defendants." *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468,

2

## I. *Jurisdictional Facts*

Transactions between Berg and C. Norris began in September 2016. At the time, Berg owned a Komatsu PC 800 LC-8 hydraulic excavator ("the Komatsu"). (Compl. ¶ 4.) Berg commissioned C. Norris to modify the Komatsu to include a 140-foot ultra-high demolition boom. (*Id.* ¶ 5.) C. Norris agreed, and delivered the refurbished Komatsu to Berg in April 2017. (*Id.* ¶ 6.)

In November 2018, Berg sued C. Norris for negligently converting the Komatsu and causing over a million dollars in damage. (*Id.* ¶ 9.) In support of the negligence claim, Berg alleges that C. Norris irreparably damaged the Komatsu by installing defective couplers that damaged the hydraulic system and by adding too much counterweight. (*Id.* ¶ 7.)

In response, C. Norris filed a counterclaim against Berg alleging breach of contract and unjust enrichment.[3] (Counterclaim, ECF No. 12.) C. Norris also brought a third-party complaint against the three entities that assisted C. Norris in modifying the Komatsu, seeking indemnity and contribution. (Third-Party Compl. ¶¶ 18–45, ECF No. 15.) In the third-party complaint, C. Norris alleges that P.E. Alliance was responsible for the engineering design that allegedly resulted in the additional counterweight (*id.* ¶¶ 37–45);[4] that PowerPure "selected, recommended, and distributed" the defective couplers (*id.* ¶¶ 18–26); and that Holmbury "designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold and/or warranted" the defective couplers (*id.* ¶¶ 27–36).

Relevant to personal jurisdiction, C. Norris alleges that its principal place of business is in Ohio. (*Id.* ¶ 1.) C. Norris alleges that the third-party defendants are also Ohio-based companies

---

473 (D. Md. 2002). Absent any allegations that C. Norris acted in bad faith in filing its third-party complaint in the District of Maryland, transfer of the third-party complaint is the more suitable approach here.

[3] C. Norris also filed a motion to dismiss for lack of personal jurisdiction (ECF No. 5), which the Court denied on April 1, 2019. (ECF No. 11.)

[4] The third-party complaint mistakenly identifies P.E. Alliance as Alliance Design.

3

and that they regularly conduct business in Maryland. (*Id.* ¶¶ 3–7.) The third-party defendants deny that they maintain meaningful ties to Maryland; each has submitted an affidavit or declaration stating they do not regularly conduct business in the state and that they performed all work related to the Komatsu project in Ohio.[5] (P.E. Alliance Klusch Aff. ¶¶ 6–12, ECF No. 53-1; Holmbury Mulder Decl. ¶¶ 5–11, ECF No. 63-1; PowerPure Eppler Decl. ¶¶ 6–14, ECF No. 90-4.) C. Norris has produced no corresponding documentation to challenge these contentions.

## *II.  Personal Jurisdiction Over the Third-Party Defendants*

### *A. Legal Standard*

A court may exercise personal jurisdiction over a defendant if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). The Maryland long-arm statute permits the exercise of personal jurisdiction over a defendant who performs one of the statute's enumerated acts. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).[6] The Maryland Court of Appeals "interpret[s] the long-arm statute to the limits permitted by the Due Process Clause." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).

To satisfy constitutional due process, a plaintiff must show that a defendant has sufficient minimum contacts with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). In determining whether there are sufficient minimum contacts, a court must consider "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities

---

[5]  Holmbury and PowerPure also specify that they do not have any offices or employees in Maryland and do not advertise or solicit business there. (Holmbury Mulder Decl. ¶¶ 6–7; PowerPure Eppler Decl. ¶¶ 11–12.)

[6]  The Maryland long-arm statute also permits the exercise of personal jurisdiction over a person who is "domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-102(a). C. Norris has not asserted that the third-party defendants have such contacts as to warrant general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Accordingly, the Court will confine its analysis to § 6-103(b) and specific jurisdiction.

4

in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

When a court evaluates whether there is personal jurisdiction over a defendant "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). The court must construe the relevant allegations in the light most favorable to the plaintiff and draw "the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In drawing its inferences, the court may look outside the plaintiff's proof, to the defendant's motions, legal memoranda, and declarations. *Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, Civ. No. ELH-13-3702, 2015 WL 751344, at *3 (D. Md. Feb. 20, 2015).

### B. Analysis

The only apparent contact between the third-party defendants and the state of Maryland is that the Ohio-based third-party defendants contracted with C. Norris—another Ohio-based company—to do work on the Komatsu project, which C. Norris initially agreed to perform for Berg, a Maryland-based corporation. C. Norris does not allege that the third-party defendants had any direct dealings with Berg or that they did any work relevant to the Komatsu project in Maryland. Outside of this specific project, C. Norris alleges generally that each of the third-party defendants regularly conducts business in Maryland, but it provides no specific allegations or documentation to support this contention. (Third-Party Compl. ¶¶ 3–7.) Each of the third-party

5

defendants states under oath that they do not conduct regular business in the state. (P.E. Alliance Klusch Aff. ¶¶ 6–12; Holmbury Mulder Decl. ¶¶ 5–11; PowerPure Eppler Decl. ¶¶ 6–14.)

Even when construing the jurisdictional allegations in the light most favorable to C. Norris, C. Norris cannot make a prima facie showing of jurisdiction under either Maryland's long-arm statute or the Due Process Clause. C. Norris does not attempt to identify which enumerated provision of Maryland's long-arm statute would authorize personal jurisdiction here, and the Court cannot identify such a provision either. This alone is a sufficient basis on which to conclude the Court lacks personal jurisdiction over the third-party defendants. *See Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 735 (D. Md. 2018) ("Plaintiff's failure to cite, and the Court's inability to identify, a governing provision of the Maryland long-arm statute provides an independent basis for dismissal or transfer.").

C. Norris also does not attempt to explain, nor can the Court discern, how the exercise of personal jurisdiction would be compatible with due process. Specifically, there is no evidence before the Court suggesting the third-party defendants purposefully availed themselves of Maryland's market. The third-party defendants' work on the Komatsu only touched Maryland because of the "unilateral activity of another party"—C. Norris—which is precisely the sort of "attenuated" contact the United States Supreme Court has held is insufficient to establish personal availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). Even if the third-party defendants knew the Komatsu would eventually end up in Maryland when they worked on it, that still does not constitute personal availment of Maryland's market. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 940, 946 (4th Cir. 1994) (finding no purposeful availment where a manufacturer's "only connection with the forum state [was] its knowledge that [its] products [would] eventually be sold there"). Because C. Norris does not

specifically allege any contacts between the third-party defendants and Maryland outside of the Komatsu project—for example, C. Norris does not allege the third-party defendants "advertise[d] or otherwise solicit[ed] business" in Maryland, or had "agents, employees or property" there—C. Norris cannot make a prima facie showing that the third-party defendants purposefully availed themselves of Maryland's market.[7] *See Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112–13 (1987). This defect cannot be overlooked, as C. Norris suggests, for the sake of judicial economy. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.").

As such, the Court concludes it does not have personal jurisdiction over the third-party defendants, and it declines to address the parties' arguments as to the merits of C. Norris's third-party complaint. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").

### III.    *Transfer of the Entire Action*

C. Norris requests that if the Court concludes there is no personal jurisdiction over the third-party defendants, it transfer this entire action to the Northern District of Ohio under 28 U.S.C.A. § 1406(a). Under § 1406(a), a court can transfer an action where "personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in

---

[7] It is true that C. Norris alleged generally in its third-party complaint that each of the third-party defendants regularly conducts business in Maryland, but the third-party defendants' statements under oath denying these contentions rebut these conclusory statements. At this stage, the Court construes allegations in the light most favorable to C. Norris, but C. Norris still has the burden of establishing a prima facie showing of personal jurisdiction and chose to attach no evidence to carry that burden.

7

that district." *In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255–56 (4th Cir. 2002). Here, the Court lacks personal jurisdiction over the third-party defendants, but it has personal jurisdiction over the parties in the underlying complaint—Berg and C. Norris. (*See* Memo. Op., ECF No. 11.) Accordingly, a transfer of the entire action also implicates 28 U.S.C.A. § 1404(a), which governs transfer where a court has personal jurisdiction over the parties and venue is proper. 15 C. Wright & A. Miller, Federal Practice & Procedure § 3842.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding whether to transfer a case under this provision, a trial judge must consider several factors including: "the private interest of the litigants, the relative ease of access to sources of proof, the availability of compulsory process for the attendance of unwilling witnesses, and 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F.Supp.2d 461, 465 (D. Md. 2000) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The question of transfer is "a matter resting in the sound discretion of the District Judge." *S. Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956). When a party moves to transfer an action under § 1404(a), "the other parties should be given notice and an opportunity to oppose the motion." *Id.* § 3844; *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986) ("the parties deserve an opportunity to be heard before a decision is rendered" on whether to transfer an action).

As explained below, the Court declines to transfer the action at this stage, but it notes that present circumstances suggest transfer of this entire case may ultimately be warranted. It is true that when a plaintiff files an action in a proper forum, courts should generally avoid interfering with this choice. *See Stronghold Sec. LLC v. Sectek, Inc.*, 582 F. Supp. 2d 726, 729 (D. Md. 2008)

8

("The fact that the plaintiffs decided to file this case in Maryland is entitled to substantial weight." (citation omitted)). But judicial economy is also an important consideration in deciding whether to transfer an action. *See Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) (section 1404(a) "was designed to prevent" the wasting "of time, energy, and money"). Efficiency considerations are particularly relevant where, as here, the court lacks jurisdiction over some of the parties involved in the dispute, and as such, cannot adjudicate the entire dispute at once. In these circumstances, a compelling interest in avoiding multiple litigations will typically justify transfer to a forum that has jurisdiction over all of the parties.[8] *See* 15 C. Wright & A. Miller, Federal Practice & Procedure § 3854 (transfer is in "the interest of justice" when it would allow the parties "to join an additional defendant or to implead a third-party defendant who is not subject to personal jurisdiction in the original forum").

But the Court cannot yet reach a conclusion as to whether to transfer this case. C. Norris made its request to transfer in its briefs opposing the third-party defendants' motions to dismiss, which means that the original plaintiff in this action—Berg—has not had an opportunity to be heard on whether this case should be transferred. The Court declines to draw any conclusions without first hearing from the plaintiff who chose to file this suit in this forum. *See Feller*, 802 F.2d at 729 n.7. Instead, it will order Berg to respond to C. Norris's request to transfer. C. Norris will be permitted, but not required, to submit an additional memorandum in support of its request to transfer.[9] To promote the "just, speedy, and inexpensive" resolution of this case, Fed. R. Civ. P. 1, the Court will order a simultaneous briefing schedule.

---

[8] The fact that the third-party defendants contest the merits of the third-party complaint does not preclude transfer of this action. As explained in Part II.B, this Court is without authority to consider the merits of the third-party complaint because it lacks jurisdiction over the third-party defendants. Accordingly, all the Court can consider is that there is a third-party complaint that is not frivolous on its face and it cannot be heard in this district. The existence of such a complaint weighs in favor of transfer. *See id.*

[9] C. Norris will not be required to file a memorandum because it provided a brief explanation of why transfer is warranted in its opposition briefs to the third-party defendants' motions to dismiss. The Court notes, however,

9

## IV.     Conclusion

For the foregoing reasons, an Order shall enter reflecting the Court's conclusion that it lacks personal jurisdiction over the third-party defendants, and directing Berg to respond to C. Norris's request to transfer this action.

DATED this __11__ day of November, 2019.

BY THE COURT:

_____
James K. Bredar
Chief Judge

---

that this explanation was cursory, and C. Norris's interests may be better served by filing a memorandum that more thoroughly explains its position. The Court also notes that C. Norris's request to transfer technically did not comply with Federal Rule of Civil Procedure 7(b)(1), which provides that "[a] request for a court order must be made by motion." The Court will look favorably upon C. Norris formalizing its request to transfer by filing a motion.